**KEENAN et al. v. BOWERS.**

No. C. A. 2191.

United States District Court
E. D. South Carolina,
Columbia Division.

Aug. 15, 1950.

John H. Lumpkin, Jo-Berry S. Lyles, Columbia, S. C., for plaintiffs.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Henry L. Spencer, Sp. Assts. to the Atty. Gen., Ben Scott Whaley, U. S. Atty., Claud N. Sapp, Jr., Asst. U. S. Atty., Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This action is brought under the provisions of Section 3772(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3772(a) (2), to recover an alleged erroneous assessment of income taxes. This court has jurisdiction of the action under the provisions of Section 24(5), Judicial Code, 28 U.S.C.A. § 41(5), New 28 U.S.C.A. § 1340.

On March 15, 1945, the taxpayers, husband and wife, filed a joint federal income tax return for the tax year 1944, and in their computation of net taxable income claimed a deduction of $1,300 under Section 23(e) (3), Internal Revenue Code, 26 U.S.C.A. § 23(e) (3), for the loss of two diamond rings not compensated for by insurance, which deduction was disallowed by the Commissioner, and an assessment made for additional taxes in the amount of $972.02, plus $180.38 interest, which was paid under protest by plaintiffs. A claim for refund was duly filed by plaintiffs and disallowed.

The stipulation by the parties and the affidavit of Mrs. Keenan, which was agreed to be considered as testimony for the plaintiff, disclose the following facts: On or about May 4, 1944, Mr. and Mrs. W. J. Keenan, the plaintiffs herein, were en route to visit their son at Grenada, Mississippi, prior to his departure overseas with the 94th Infantry, and they stopped and spent the night at the Bankhead Hotel in Birmingham, Alabama; they had never spent the night in said hotel before and the surroundings were strange to both of them; their hotel room had single beds with a small lamp table between the beds. This arrangement differed from that in their home where they had bed tables on each side. On this night, Mr. Keenan prepared for bed, and being bothered with a nose irritation, placed a box of kleenex tissues

on his side of the bed table and went to sleep prior to Mrs. Keenan. Subsequent to this, his wife retired. Customarily, when retiring at home, Mrs. Keenan removed her rings and placed them on or in her bureau, but this night she did not do so. However, during the night, she found her rings uncomfortable, and recalling the box of kleenex on the table, she reached out in the dark and unbeknown to her husband, took a piece of kleenex and wrapped her rings in it, and placed them wrapped on her side of the small table; she wrapped them in kleenex tissue with the thought in mind that this would be a possible precaution against the theft of the rings; during the night, Mr. Keenan awoke several times, used pieces of kleenex tissues to blow his nose, and having no convenient waste basket at hand, placed these balls of tissue on the table, intending to dispose of them upon rising; the next morning, Mr. Keenan arose early and prior to his wife's awakening, hastily preparing for an early departure, swept the used tissues up, not knowing that some of them contained the rings, balled them up, went to the bathroom and disposed of them in the toilet, flushing it forthwith; about a half an hour after Mr. Keenan's actions, Mrs. Keenan realized what had happened and immediately communicated with the hotel manager who called in the hotel engineer. A search of the trap was to no avail and then later the City of Birmingham's engineer went into the large trap in the sewer into which the hotel refuse emptied but all efforts to recover the rings were unavailing. The value of these rings, less the maximum amount of insurance which could be collected, was $1,300.

Section 23(e) (3) of the Internal Revenue Code, 26 U.S.C.A. § 23(e) (3), upon which the claim for deduction is based, provides as follows: In computing net income there shall be allowed as deductions: "In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—* * * of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, *or other casualty,* or from theft. * * *" (Emphasis added)

The question for decision is whether or not the phrase "other casualty" in the statute can be construed so as to cover the loss of jewelry under the foregoing agreed statement of facts.

It is well established that deductions are a matter of legislative grace and no deductions will be allowed for losses unless the alleged loss falls within one of the categories enumerated in the statute. The taxpayer must show he comes within the terms of the provisions of the statute allowing deductions. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Remco S. S. Co. et al. v. Commissioner of Internal Revenue, 9 Cir., 82 F.2d 988, 991; McGinley Corporation v. Commissioner of Internal Revenue, 5 Cir., 82 F.2d 56, 57; Bercaw v. Commissioner of Internal Revenue, 4 Cir., 165 F.2d 521, 525; Brigham v. U. S., D.C., 38 F.Supp. 625.

Generally, the words "other" and "any other" following an enumeration of particular classes of things in a statute, must be read as meaning "other such like" and include only words of like kind or character. Bigger v. Unemployment Compensation Commission, 4 Terry (Del.) 274, 46 A.2d 137, 142.

The word "other" in a statute means of like kind and character. Twin Falls County v. Hulbert, 66 Idaho 128, 156 P.2d 319, 324.

The word "casualty" has been defined as follows: "An accident or casualty, according to common understanding, proceeds from an unknown cause or is an unusual effect of a known cause. Either may be properly said to occur by chance and unexpectedly." Chicago, St. Louis & N. O. R. Co. v. Pullman Co., 139 U.S. 79, 11 S.Ct. 490, 493, 35 L.Ed. 97. See also, Alice P. Bachofen Von Echt, 21 B.T.A. 702, 709. "Casualty" has also been defined as "an event due to some sudden, unexpected, or unusual cause," Matheson, Exec. v. Comm., 2 Cir., 54 F.2d 537, 539; and embraces losses arising through the action of natural

physical forces and which occur suddenly, unexpectedly, and without design on the part of the one who suffers the loss. However, it is now recognized that a human agency can constitute or cause the sudden turn of events resulting in the loss. Ray Durden et al., 3 T.C. 1; Robert L. Stephens v. Commissioner, 3 T.C. 1.

The words "other casualty" were added by the 1916 Act, and the Treasury at first took the view that "other casualty" must be an incident similar to fires, storms or shipwreck arising from a natural cause and not due to negligence. In Shearer v. Anderson, 2 Cir., 16 F.2d 995, 996, this construction was held to be erroneous and the court, in allowing a deduction for damage to the taxpayer's pleasure automobile sustained when it overturned on an icy road, stated: " * * * as 'casualty' expresses rather the result than the cause of the damage, that is, the wreck itself rather than the lightning, storm, or the negligence or fault of some person, so the 'other casualty' is at least as clearly ejusdem generis (of the same kind) with shipwreck as with fire or storm." The court's modification of the Treasury Regulations in the case of Shearer v. Anderson, 2 Cir., 16 F.2d 995, does not change the Treasury's construction that the phrase means *or other like casualty,* because the court, in allowing a deduction for the damages resulting from the automobile wreck, held that the wreck of the automobile was similar to a shipwreck and was a casualty of the same kind.

Some of the losses which have been held to be deductible as from "other casualty" are as follows: loss occasioned by freezing and bursting of water pipes in a residence during the absence of the occupant; loss occasioned by the bursting of a boiler used in heating a taxpayer's residence; damage to a factory from an earthquake; an extensive deep sinking of land caused by a subterranean disturbance; damage to trees caused by a sleet and ice storm; loss from violent quarry blasting operations.

Examples of losses that have been held not to be from "other casualty" are as follows: damage to buildings caused by termites; loss of a ring when there was no evidence or testimony establishing that the ring was stolen rather than mislaid, and the taxpayer did not attempt to establish the fair market value of the ring as of the date of disappearance; loss of a ring when it slipped from taxpayer's finger and was lost in muddy water when he was trying to retrieve a decoy while duck hunting; damage to a residence caused by excavations on property adjoining that of the taxpayer; loss occasioned by rusting and corrosion of the re-enforcing steel used in the cement floor beams of a house built on an island; damage on account of injuries caused to one who trips over a wire stretched in front of the taxpayer's residence; loss of household goods either in storage or in transit; and loss of a bird dog which disappeared when released for exercise by its handler and was never seen again. Mertens, Law of Federal Income Taxation, § 28.57, pp. 215, 216, and the 1950 Cumulative Pocket Supplement, p. 98.

The section of the statute involved herein has been construed as authorizing the deduction only of losses caused by fires, storms, shipwreck, or other *like* casualty. Ray Durden, 3 T.C. 1; Stephens, 3 T.C. 1. Under the doctrine of ejusdem generis it is necessary to define the word "casualty" in connection with the words "fires, storms, shipwreck" immediately preceding it. By the rule of ejusdem generis, where general words follow the enumeration of particular classes of things, the general words should be construed as applicable only to those of the same general nature or class as those enumerated. Merchants' National Bank v. United States, 42 Ct.Cl. 6, 19. The rule is based on the reason that, if the Legislature had intended the general words to be used in their unrestricted sense, there would have been no mention of the particular classes.

In the case of United States v. Rogers, 122 F.2d 485, the Circuit Court of Appeals for the Ninth Circuit said: "The meaning of the word 'casualty' as used in the statute depends upon the context. The doctrine of ejusdem generis requires the statute to be

construed as though it read 'loss by fires, storms, shipwrecks, or other casualty of the same kind'." See also, Matheson v. Commissioner, 2 Cir., 54 F.2d 537.

So, the question here is whether or not the loss of the two diamond rings by the taxpayers may be classified as a casualty of the same kind as a loss by "fires, storms, shipwreck".

The case nearest in point is Stevens v. Commissioner,[1] decided July 8, 1947, where the taxpayer, while duck hunting and in the act of retrieving a decoy, a ring belonging to him, slipped off his finger and dropped into muddy water several feet deep. Although he was conscious of the fact at the moment the ring slipped from his finger, it disappeared into the muddy water making all efforts to recover it futile. In this case the Tax Court disallowed the deduction and said: "The loss here was not like that resulting from the collision of an automobile, Shearer v. Anderson, supra; W. S. Bronson, 9 B.T.A. 1008; or a flood, Ferguson v. Commissioner, 10 Cir., 59 F.2d 893; or an ice storm, Frederick H. Nash, 22 B.T.A. 482; or subterranean disturbances, Harry Johnston Grant, 30 B.T.A. 1028. The petitioner merely permitted his ring to drop from his finger, by his own carelessness, we must presume, without the intervention of any sudden or destructive force. It was much the same kind of loss as might result from the loss of one's purse, or any other article of value. Certainly, if Congress had intended to allow the deduction of such losses it would have expressed its aim in language much simpler and more appropriate to that end than is to be found in section 23(e) (3)."

In the instant case it may be conceded that the loss of the rings was due to an unexpected and unusual cause and was not an intentional act on the taxpayers' part, but the loss lacks the element of suddenness. The primary cause of the loss was the placing of the rings in the kleenex tissue. The loss was caused by a chain of events on the part of Mrs. Keenan and Mr. Keenan. There was no intervening sudden force, cause or occurrence which brought on the event such as would ever be present in a casualty arising from fires, storms or shipwreck. I cannot say that the event or accident resulting in the loss was of the same kind as would be caused by fire, storm or shipwreck.

Therefore, judgment must be entered for the defendant, and it is so ordered.

---

1. No opinion for publication.